**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Camden Division)**

| | |
|---|---|
| EUGENE TAYLOR, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| FRANCISCO AMBRIFI, | ) |
| Individually and in his Official | ) |
| Capacity as a Police Officer for the | ) |
| Township of Delanco; THE TOWNSHIP | ) |
| OF DELANCO, NEW JERSEY; | ) |
| SHAWN MICKLE, Individually and in his Official | ) |
| Capacity as a Police Officer for the City of | ) |
| Beverly; THE CITY OF | ) |
| BEVERLY, NEW JERSEY; JOHN HARRIS, | ) |
| Individually and in his Official | ) |
| Capacity as a Police Officer for | ) |
| Edgewater Park Township; EDGEWATER PARK | ) |
| TOWNSHIP, NEW JERSEY | ) |
| | ) |
| Defendants. | ) |
| | ) |
|_____| ) |

**<u>COMPLAINT</u>**

Comes now Plaintiff, Eugene Taylor, by and through undersigned counsel, for this

Complaint and hereby states:

**INTRODUCTION**

1. On May 14, 2013, Defendant Francisco Ambrifi, acting in his capacity as a Police Officer

   employed by Defendant the Township of Delanco, twice pepper sprayed Plaintiff Eugene

   Taylor, physically beat Mr. Taylor, and then shot Mr. Taylor six times.  Mr. Taylor was

   twenty-one years old, unarmed, and had no history of violence.  Officer Ambrifi, a first

degree black belt in Brazilian Jiu-Jitsu, had never received proper training from the Township of Delanco in use of force, particularly as it pertains to persons with mental illness.  When subsequently interviewed about the incident, after initially asserting his Fifth Amendment rights and refusing to make any statement, Officer Ambrifi lied about the circumstances that led to him employ force in the manner in which he did against Mr. Taylor.  As a result of Officer Ambrifi pepper spraying, beating and shooting Mr. Taylor six times, Mr. Taylor was hospitalized in critical condition for approximately one month. Mr. Taylor suffered multiple broken ribs, a punctured lung, and other serious injuries.  He underwent numerous emergency surgeries during the course of his hospitalization.  Mr. Taylor now lives with permanent injuries, including but not limited to, the loss of a portion of his lung, bullet fragments permanently lodged in his chest, a shoulder that frequently dislocates, chronic pain, and scarring.

2.  The Township of Delanco, New Jersey is sued as a result of individual Defendant Ambrifi's actions within the scope and authority of his duties as an employee of the Township of Delanco, as caused by and ratified by the Township of Delanco, and as a result of the Township of Delanco's deliberate indifference in failing to adequately train its police officers with respect of use of force generally, and specifically with respect to use of force involving citizens who are mentally ill or emotionally disturbed.

3.  Individual Defendants Shawn Mickle and John Harris in their capacities as police officers of Defendants City of Beverly and Edgewater Park Township, respectively, responded to the scene of the altercation between Officer Ambrifi and Mr. Taylor.  They arrived after Officer Ambrifi had pepper sprayed, beaten, and shot Mr. Taylor six times.  Mickle and Harris assisted in placing hand cuffs on both the wrists and ankles of Mr. Taylor as he lay

bleeding on the ground.  After Mr. Taylor's hands and ankles were cuffed, rather than rendering first aid, one of these officers punched Mr. Taylor with the intent of inflicting pain, while the other was holding Mr. Taylor to the ground.  Both Mickle and Harris covered up this fact in their subsequent statements about the incident.

4. Each of the individual Defendants named in the Complaint is sued in both his individual and official capacities, unless specified otherwise.

5. Defendants the City of Beverly and Edgewater Park Township are sued as a result of individual Defendants Mickle and Harris's actions within the scope and authority of their duties as employees of the City of Beverly and Edgewater Park Township, respectively, as caused by and ratified by the City of Beverly and Edgewater Park Township, respectively.

6. As a result of the actions and omissions of all of the Defendants, Mr. Taylor, who survived the ordeal, suffered temporary and permanent physical injuries and emotional distress.

## JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983 and 42 U.S.C. § 12132.

8. Supplemental jurisdiction over Mr. Taylor's state law claims exists pursuant to 28 U.S.C. § 1367(a).

9. Venue is proper in the District of New Jersey under 28 U.S.C. § 1391(b), because that is the judicial district in which the claims arose, and in which the defendants resided or conducted business at all times relevant to the Complaint.

## JURY DEMAND

10.  Pursuant to the Seventh Amendment of the United States Constitution, Mr. Taylor requests a jury trial on all issues and claims set forth in this Complaint.

## THE PARTIES

11.  Plaintiff, Eugene Taylor ("Mr. Taylor"), is an African American man who presently resides in Mt. Holly, New Jersey.  As of the date of the incident set forth in this Complaint, Mr. Taylor was twenty-one years old and residing in Palmyra, New Jersey.

12.  Defendant Francisco Ambrifi ("Officer Ambrifi") is employed by the Township of Delanco Police Department.  Upon information and belief, Ambrifi is a resident of Philadelphia, Pennsylvania.  At all times relevant to this Complaint, he was a duly appointed and acting police officer of the Delanco Township Police Department with the rank of patrolman, acting under color of state law, within the scope of his employment, and in his individual capacity pursuant to the statutes, ordinances, regulations, policies, customs and usage of the Township of Delanco and the State of New Jersey.  In addition to working as a patrolman in the Delanco Township Police Department, Officer Ambrifi is a co-owner and head instructor of Brazilian Ju-Jitsu at a mixed martial arts ("MMA") facility located in northeast Philadelphia.  Mr. Ambrifi is also an experienced competitive wrestler and boxer.

13.  Defendant Shawn Mickle is employed by the City of Beverly Police Department.  Upon information and belief, Mickle is a resident of Roebling, New Jersey.  At all times relevant to this complaint, he was a duly appointed and acting police officer of the City of Beverly Police Department with the rank of patrolman, acting under color of state law, within the scope of his employment, and in his individual capacity pursuant to the statutes,

ordinances, regulations, policies, customs and usage of the City of Beverly and the State of New Jersey.

14.  Defendant John Harris is employed by the Edgewater Park Township Police Department. Upon information and belief, Harris is a resident of Palmyra, New Jersey.  At all times relevant to this complaint, he was a duly appointed and acting police officer of the Edgewater Park Township Police Department with the rank of detective sergeant, acting under color of state law, within the scope of his employment, and in his individual capacity pursuant to the statutes, ordinances, regulations, policies, customs and usage of the Edgewater Park Township and the State of New Jersey.

15.  Defendant the Township of Delanco is a township located in Burlington County, New Jersey and has among its functions operating and maintaining a law enforcement agency known as the Delanco Township Police Department.

16.  Defendant City of Beverly is a city located in Burlington County, New Jersey and has among its functions operating and maintaining a law enforcement agency known as the City of Beverly Police Department.

17.  Defendant Edgewater Park Township is a township located in Burlington County, New Jersey and has among its functions operating and maintaining a law enforcement agency known as the Edgewater Park Police Department.

**FACTS**

18.  While Mr. Taylor had been generally healthy for most of his life, as of May 2103, he had been deteriorating mentally and physically over the previous months due to the onset of schizophrenia.

19.  Schizophrenia is a mental health condition that often emerges for the first time in early

adulthood.  Individuals with schizophrenia can experience vivid hallucinations and delusions that prevent them from understanding reality normally.  It is common for persons with schizophrenia to have religiously-based delusions.

20.  On May 13 and 14, 2013, Mr. Taylor was suffering from psychosis with delusions that caused him to fixate, generally, on God and the return of Jesus Christ.

21.  At approximately 7:00 p.m. on May 13, 2013, Mr. Taylor was in Palmyra, New Jersey, speaking loudly and suffering from religiously-based delusions.  His grandfather, Leonard Taylor, called 911 to report that his grandson, Mr. Taylor, was acting disorderly.

22.  Police responded to the scene.  Mr. Taylor was speaking about God and was having difficulty complying with the officers' instructions.  However, Mr. Taylor was not violent and posed no threat.  Accordingly, after speaking to Mr. Taylor for several minutes, the officers told Mr. Taylor that he was free to go, asking only that he not return to his grandfather's house.

23.  About eight hours later, in the early hours of May 14, 2013, Mr. Taylor was wandering along the banks of the Delaware River in Delanco, New Jersey, speaking loudly about Jesus Christ.

24.  At approximately 3:45 a.m., Mr. Taylor was standing near the intersection of Delaware Avenue and Willow Street in Delanco, New Jersey.  His yelling awoke residents inside the home located at 425 Delaware Avenue, approximately one house away from the intersection.  A resident of the home called 911 about the disturbance.

25.  In response to the 911 call, central dispatch called for an officer to respond to a disorderly person complaint.  Officer Ambrifi of the Delanco Township Police Department advised by radio that he would respond to the call.

26.  Within minutes of responding to the call from central dispatch, Officer Ambrifi arrived on location.  He did not use sirens or emergency lights as he approached 425 Delaware Avenue. He did not call in or otherwise notify central dispatch or anyone else of his arrival.

27.  As Officer Ambrifi approached 425 Delaware Avenue in his marked police car, a sport utility vehicle, he saw Mr. Taylor standing on the side of the road near the lawn of the house.  Officer Ambrifi stopped his car in the front of 425 Delaware Avenue and got out and engaged Mr. Taylor, without advising dispatch he had arrived or calling for back-up.

28.  Upon getting out of his car, Officer Ambrifi immediately ordered Mr. Taylor to put his hands up and/or on the hood of the vehicle.  Mr. Taylor was unarmed.  He stood 5'9" tall and weighed approximately 155 pounds.  Upon information and belief, Officer Ambrifi is both taller and heavier than Mr. Taylor.

29.  In response to Officer Ambrifi's order, Mr. Taylor did not put his hands up.  Instead, he made several remarks about Jesus Christ.  Officer Ambrifi heard Mr. Taylor's comments and later acknowledged that it was immediately clear to him that Mr. Taylor was not in his right state of mind.  Nonetheless, Officer Ambrifi simply continued to issue orders to Mr. Taylor.  Officer Ambrifi continued to instruct Mr. Taylor to get on the ground or to put his hands up or on the hood of the police car.  In response, Mr. Taylor did not comply, but rather continued his religious ramblings.  Mr. Taylor did not threaten Officer Ambrifi, physically or verbally.

30.  At this time, Officer Ambrifi decided to use force to get Mr. Taylor to comply with his order and in apparent attempt to effect an arrest.  Officer Ambrifi drew his can of oleoresin capisicum spray (pepper spray) and deployed a burst directly into Mr. Taylor's face.  In doing so, Ambrifi violated the use of force guidelines applicable him as a Delanco

Township Police Officer.

31. Mr. Taylor, despite having been pepper sprayed, did not threaten Officer Ambrifi, physically or verbally. Officer Ambrifi quickly concluded that the first burst of pepper spray had not caused Mr. Taylor to comply with Ambrifi's instructions. Accordingly, Officer Ambrifi decided to deploy a second, longer burst of spray, again directly onto Mr. Taylor's face. Officer Ambrifi emptied almost the entire canister of pepper spray into Mr. Taylor's face. In doing so, Ambrifi violated the use of force guidelines applicable him as a Delanco Township Police Officer.

32. Mr. Taylor, despite having been twice pepper sprayed, did not threaten Officer Ambrifi, physically or verbally. However, the second burst of pepper spray did not improve Mr. Taylor's grasp of the situation. After having been doused with pepper spray twice directly in the face, Mr. Taylor remained unable to comply with Officer Ambrifi's orders.

33. Officer Ambrifi decided physically to "take down" Mr. Taylor and engage him in a ground fight. Officer Ambrifi holds a first degree black belt in Brazilian Jiu-Jitsu, a martial art, combat sport and self-defense system that focuses on ground fighting. Employing his Brazilian Jiu-Jitsu training, Officer Ambrifi physically took Mr. Taylor to the ground. Officer Ambrifi proceeded to hit Mr. Taylor with hands and fists. In doing so, Officer Ambrifi violated the use of force guidelines applicable him as a Delanco Township Police Officer.

34. During the course of the "take down," Officer Ambrifi chose to employ a weapon against Mr. Taylor. He raised his large, heavy duty, department-issued flashlight overhead and brought it down on Mr. Taylor with full force, repeatedly striking Mr. Taylor on the shoulders and on the head. In doing so, Officer Ambrifi violated the use of force guidelines

8

applicable him as a Delanco Township Police Officer.

35. As Officer Ambrifi continued to hit Mr. Taylor, Officer Ambrifi pulled out his service firearm and shot Mr. Taylor. In quick succession, he continued to fire bullets into Mr. Taylor, hitting him a total of six times. In doing so, Ambrifi violated the use of force guidelines applicable him as a Delanco Township Police Officer.

36. In addition to hitting Mr. Taylor with six bullets, Officer Ambrifi also inadvertently shot himself in the leg.

37. The use of force and the use of deadly force employed by Officer Ambrifi against Mr. Taylor was excessive and more extensive than reasonably necessary.

38. At no time prior to shooting himself did Officer Ambrifi call for back-up or alert any other officers or authorities that he was at the scene, or that he was contemplating initiating hand-to-hand combat.

39. After he shot himself, Officer Ambrifi called for back-up.

40. The first three officers to arrive on the scene were Officer Michelle Ent, an officer with Edgewater Park Township Police Department, Defendant Shawn Mickle, and Defendant John Harris.

41. When they arrived, Officer Ambrifi was on top of Mr. Taylor, who was lying face down in the road, near the curb. Mr. Taylor had been shot repeatedly in the back and chest and was bleeding.

42. Officer Ent and Sergeant Harris applied handcuffs to Mr. Taylor's wrists. Officer Mickle applied handcuffs to Mr. Taylor's ankles.

43. After both his hands and ankles were cuffed, Officer Ambrifi got off of Mr. Taylor and crawled a few feet away. Officer Ent followed Officer Ambrifi and proceeded to provide

first-aid to Officer Ambrifi who had shot himself in the leg.

44.  While Mr. Taylor's hands and ankles were cuffed, and Sergeant Harris and Officer Mickle were on top of him, Mr. Taylor was fully physically restrained and was offering no resistance.  Nonetheless, one of these officers, with the intent to injure, suddenly and violently punched Mr. Taylor as he lay on the ground bleeding from his multiple gunshot wounds.  This use of force was excessive and more extensive than reasonably necessary.

45.  Sergeant Harris and Officer Mickle were both interviewed by law enforcement in the internal investigation of Officer Ambrifi and criminal investigation of the incident.  Both knowingly, purposefully, and intentionally omitted from their description of their involvement that either had punched Mr. Taylor or physically assaulted him in anyway. Both knew that this fact was or should have been relevant and material to the investigation of the incident by law enforcement.

46.  Officer Ambrifi initially declined to make any statement to law enforcement investigating the incident, citing his Fifth Amendment right not to incriminate himself.  Officer Ambrifi maintained this position for approximately one month after the incident.

47.  On June 10, 2013, he agreed to be interviewed by law enforcement in the internal investigation of Officer Ambrifi and criminal investigation of the incident.  In that interview, Officer Ambrifi lied repeatedly.  These lies included, but are not limited to: 1) it appeared Mr. Taylor was going to run at Officer Ambrifi; 2) Ambrifi tried to de-escalate the situation as best as he could; 3) Ambrifi followed his law enforcement training; and 4) Mr. Taylor threatened to kill him.

48.  Individual Defendants Ambrifi, Mickle, and Harris knew that their intentional misstatements or material omissions would result in the criminal prosecution of Mr. Taylor.

The Individual Defendants believed that the criminal prosecution of Mr. Taylor would help cover up their own wrongdoing in depriving Mr. Taylor of his constitutional protections. The Individual Defendants believed this would shield them from criminal prosecution and/or civil liability, and shield Defendants the Township of Delanco, the City of Beverly, and Edgewater Park Township from civil liability.

49.  Across the United States, and within the State of New Jersey specifically, police officers have increasingly been called upon to interact with people suffering from mental illness.  It has been thoroughly publicized that these encounters often result in tragic, preventable, and unjustified uses of force by the police against such persons, owing to the failure of police departments to adequately train their officers in how to interact with and diffuse crises involving the mentally ill.

50.  Numerous police departments across the country and within the State of New Jersey have recognized the inadequacy of their training programs and have modified them so as to teach officers how to avoid needless uses of force against the mentally ill.  These training programs have enjoyed great success in curbing police violence against mentally ill people.

51.  The injuries inflicted upon Mr. Taylor by Officers Mickle and Harris were the result of the City of Beverly and Edgewater Park Township's failures to adopt adequate policies and to adequately train their police officers with regard to the handling of incidents involving mentally ill or emotionally disturbed persons.  The City of Beverly and Edgewater Park Township furthermore failed to adequately train their police officers with regard to the use of force, both generally and in circumstances involving mentally ill and emotionally disturbed persons, and with regard to the documentation of use-of-force incidents.  These failures demonstrate that the Defendant City and Township were deliberately indifferent to

the constitutional rights of mentally ill and emotionally disturbed persons, including Mr. Taylor.

52.  The Defendant municipalities (Delanco, Beverly, and Edgewater Park) were on notice that their training programs were inadequate, and that by failing to provide the sort of training proven successful in other jurisdictions, they were creating the likelihood that their police officers would commit constitutional violations against mentally ill citizens.  By failing to train their police officers for interactions with the mentally ill, the Defendant municipalities displayed deliberate indifference as to the likelihood of constitutional violations would be committed against citizens with whom their police officers would interact.

53.  Defendant the Township of Delanco, in deliberate indifference to the well-being of mentally ill or emotionally disturbed citizens with whom its police officers interact, failed to provide its police officers adequate training with respect to how to interact with such citizens.

54.  Defendant the Township of Delanco, in deliberate indifference to the well-being of citizens with whom he would interact, failed to provide Officer Ambrifi adequate training with respect to the use of force and the use of deadly force.

55.  Officer Ambrifi failed to follow the law enforcement training he did receive.

56.  Defendant City of Beverly, in deliberate indifference to the well-being of  mentally ill or emotionally disturbed citizens with whom its police officers interact,  failed to provide its police officers adequate training with respect to how to interact with such citizens, the use of force, and in the proper documentation of incidents involving the use of force.

57.  Defendant Mickle failed to follow the training he did receive.

58.  Defendant Edgewater Park Township, in deliberate indifference to the well-being of

mentally ill or emotionally disturbed citizens with whom its police officers interact, failed to provide its police officers adequate training with respect to how to interact with such citizens, the use of force, and in the proper documentation of incidents involving the use of force and the use of deadly force.

59.  Defendant Harris failed to follow the training he did receive.

60.  Defendants the Township of Delanco, the City of Beverly, and Edgewater Park Township took no employment or other action against the Individual Defendants for the wrongdoing described in this Complaint.  This failure to act resulted in the knowing acquiescence, approval, and ratification of the wrongdoing by the Individual Defendants.

61.  Defendants the Township of Delanco, the City of Beverly, and Edgewater Park Township each has a duty and legal obligation to ensure that their law enforcement officers preserve the constitutional rights of all citizens with whom they interact.

62.  Individual Defendants Ambrifi, Mickle, and Harris each has a duty and legal obligation to preserve the constitutional rights of all citizens with whom they interact.

63.  It is the custom, policy, and procedure of Defendants the Township of Delanco, the City of Beverly, and Edgewater Park Township to operate jointly and in aid of each other in the operation of law enforcement activities by having their respective police departments aid each other.

64.  The Defendants, acting individually and in concert with each other, under color of law in their official capacities intentionally deprived Mr. Taylor of his constitutional rights.  The Defendants, acting individually and in concert with each other, also acted with reckless indifference to Mr. Taylor's constitutional rights.

65.  As a result of the Defendants' actions and omissions, Mr. Taylor suffered significant

13

physical injuries and emotional distress, injuries which Mr. Taylor continues to suffer and will suffer in the future.

## CAUSES OF ACTION

### FEDERAL CLAIMS FOR RELIEF

### COUNT I
(Violation of 42 U.S.C. § 1983 against Defendant Ambrifi and Defendant Township of Delanco)

66. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

67. When Defendant Ambrifi pepper sprayed Plaintiff Eugene Taylor and then forced him to the ground and beat and shot him, he willfully subjected Mr. Taylor to an unreasonable seizure by employing force against him that was unreasonable and not justified by any alleged threat posed by Mr. Taylor. The above-referenced actions, individually and cumulatively, were unreasonable and unjustified. In taking these actions, Defendant Ambrifi violated the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

68. When Defendant Ambrifi lied to investigators about the details of his encounter with Mr. Taylor, he did so knowing that his false statements would subject Mr. Taylor to criminal charges and prosecution. In making these statements, Defendant Ambrifi violated the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

69.  No disciplinary or other action was taken by Defendant Township of Delanco as a result of Defendant Ambrifi's conduct.  This failure constituted acquiescence, approval, and ratification of his actions.

## COUNT II
### (*Monell* claims against Defendant Township of Delanco)

70.  Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

71.  The injuries inflicted upon Mr. Taylor by Officer Ambrifi were the result of the Township of Delanco's failures to adopt adequate policies and to adequately train its police officers with regard to the handling of incidents involving mentally ill or emotionally disturbed persons.  The Township of Delanco furthermore failed to adequately train its police officers with regard to the use of force, both generally and in circumstances involving mentally ill and emotionally disturbed persons, and with regard to the documentation of use-of-force incidents.  Any reasonable municipality cognizant of its duties and obligations to the citizens it serves would be aware of the need for training on use of force generally, and specifically as it pertains to citizens with mental illnesses.  The failures of the Township of Delanco adequately to train its police officers demonstrate that the Township of Delanco was deliberately indifferent to the constitutional rights of mentally ill and emotionally disturbed persons, including Mr. Taylor.  In failing to adequately train its officers, the Defendant Township of Delanco violated the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

<u>COUNT III</u>
(Violation of 42 U.S.C. § 1983 against Defendants Mickle and Harris and Defendants the City of
Beverly and Edgewater Park Township)

72. Plaintiff incorporates the allegations contained in the previous paragraphs of this
Complaint as if fully set forth herein.

73. When Officer Shawn Mickle and Sergeant John Harris held Mr. Taylor to the ground while
one of them punched Mr. Taylor, they willfully subjected him to an unreasonable seizure
by employing force against him that was unreasonable and not justified by any alleged
threat that he posed. Subsequently, Defendants Mickle and Harris intentionally omitted
from their statements to investigators that Mr. Taylor had been physically assaulted while
he was restrained. No disciplinary or other action was taken by Defendants the City of
Beverly and Edgewater Park Township as a result of Defendant Mickle and Sergeant
Harris's conduct. This failure constituted acquiescence, approval, and ratification of
Officer Mickle and Sergeant Harris's actions. Defendant Mickle and Harris's actions
violated the Fourth and Fourteenth Amendments to the United States Constitution as
implemented by 42 U.S.C. § 1983.

<u>COUNT IV</u>
(*Monell* claims against Defendants City of Beverly and Edgewater Park Township)

74. Plaintiff incorporates the allegations contained in the previous paragraphs of this
Complaint as if fully set forth herein.

75. The injuries inflicted upon Mr. Taylor by Officers Mickle and Harris were the result of
the City of Beverly and Edgewater Park Township's failures to adopt adequate policies and
to adequately train their police officers with regard to the handling of incidents involving
mentally ill or emotionally disturbed persons. The City of Beverly and Edgewater Park
Township furthermore failed to adequately train their police officers with regard to the use

16

of force, both generally and in circumstances involving mentally ill and emotionally disturbed persons, and with regard to the documentation of use-of-force incidents.  These failures demonstrate that the Defendant City and Township were deliberately indifferent to the constitutional rights of mentally ill and emotionally disturbed persons, including Mr. Taylor.

COUNT V
(Violation of the Americans with Disabilities Act against
Defendants Ambrifi and Township of Delanco.)

76. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

77.  As providers of governmental services, Defendants Ambrifi and Township of Delanco had a duty to comply with Title II of the Americans with Disabilities Act (ADA), which prohibits discrimination against persons who have, have had, or are perceived as having a disability.

78.  On the date of his encounter with Officer Ambrifi, Plaintiff Eugene Taylor suffered from schizophrenia, a mental disability causing vivid hallucinations and delusions.

79.  By failing to train its police officers (including Officer Ambrifi) in how to recognize and respond appropriately to persons suffering from mental disabilities, the Defendant Township discriminated against Mr. Taylor on the basis of his disability and failed to provide him reasonable accommodations, resulting in his denial of adequate police services provided by the Township.  In so doing, the Defendant Township violated Mr. Taylor's rights under the ADA.

80.  On the date of his encounter with Officer Ambrifi, the symptoms of Mr. Taylor's disability were readily apparent, such that Defendant Ambrifi was put on notice of Mr. Taylor's

disability.  Nonetheless, Defendant Ambrifi failed to provide reasonable accommodations for Mr. Taylor's disability, and as a result, he denied Mr. Taylor the benefit of adequate police services to which he was entitled.  In so doing, Officer Ambrifi violated Mr. Taylor's rights under the ADA.

81.  No disciplinary or other action was taken by Defendant Township of Delanco as a result of Defendant Ambrifi's conduct.  This failure constituted acquiescence, approval, and ratification of his actions.

## STATE LAW CLAIMS

### COUNT VI
(Assault and battery claim against Defendant Ambrifi in his individual capacity)

82.  Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

83.  When Officer Ambrifi pepper sprayed Mr. Taylor and then forced him to the ground and beat and shot him, his actions, individually and cumulatively, amounted to unjustified uses of force that constituted unlawful assaults and batteries against Mr. Taylor.

### COUNT VII
(Intentional infliction of emotional distress claim against
Defendant Ambrifi in his individual capacity)

84.  Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

85.  By intentionally pepper spraying Mr. Taylor and then taking him to the ground and beating and shooting him, Defendant Ambrifi performed actions that were extreme, outrageous, and beyond the scope of conduct that should be tolerated by citizens in a civilized society.

86.  Defendant Ambrifi's conduct was performed with the intent of inflicting, and in fact did

inflict, severe mental and emotional distress upon Mr. Taylor.

## COUNT VIII
### (Negligence claim against Defendant Ambrifi in his individual capacity)

87. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

88. By using violent and ultimately deadly force against Mr. Taylor despite his obvious mental disability, Defendant Ambrifi failed to exercise the appropriate level of care that he owed to Mr. Taylor. Defendant Ambrifi was negligent in his actions toward Mr. Taylor.

89. Defendant Ambrifi's negligence resulted in severe physical and emotional harm to Mr. Taylor.

## COUNT IX
### (Assault and battery claims against Defendants Mickle and Harris in their individual capacities)

90. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

91. When Officer Shawn Mickle and Sergeant John Harris held Mr. Taylor to the ground and punched him, their actions amounted to unreasonable uses of force that constituted unlawful assaults and batteries against Mr. Taylor.

## COUNT X
### (Intentional infliction of emotional distress against Defendants Mickle and Harris in their individual capacities)

92. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

93.  By holding down and punching Mr. Taylor when he was defenseless and posing no threat, Defendants Mickle and Harris performed actions that were extreme, outrageous, and beyond the scope of conduct that should be tolerated by citizens in a civilized society.

94.  Defendants Mickle's and Harris's conduct was performed with the intent of inflicting, and in fact did inflict, severe mental and emotional distress upon Mr. Taylor.

<u>COUNT XI</u>

(Violation of the New Jersey Civil Rights Act, 10:6.2, against Defendant Ambrifi and Defendant Township of Delanco)

95.  Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

96.  When Defendant Ambrifi pepper sprayed Plaintiff Eugene Taylor and then forced him to the ground and beat and shot him, he willfully subjected Mr. Taylor to an unreasonable seizure by employing force against him that was unreasonable and not justified by any alleged threat posed by Mr. Taylor.  The above-referenced actions, individually and cumulatively, were unreasonable and unjustified.  In taking these actions, Defendant Ambrifi violated Article 1, Section 8 of the New Jersey Constitution, as well as the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

97.  When Defendant Ambrifi lied to investigators about the details of his encounter with Mr. Taylor, he did so knowing that his false statements would subject Mr. Taylor to criminal charges and prosecution.  In making these statements, Defendant Ambrifi violated Article 1, Section 8 of the New Jersey Constitution, as well as the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

98.  No disciplinary or other action was taken by Defendant Township of Delanco as a result

of Defendant Ambrifi's conduct.  This failure constituted acquiescence, approval, and ratification of his actions.

<u>COUNT XII</u>

(*Monell*-type claims Violation of the New Jersey Civil Rights Act, 10:6.2, against Defendant Township of Delanco)

99. Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

100.       The injuries inflicted upon Mr. Taylor by Officer Ambrifi were the result of the Township of Delanco's failures to adopt adequate policies and to adequately train its police officers with regard to the handling of incidents involving mentally ill or emotionally disturbed persons.  The Township of Delanco furthermore failed to adequately train its police officers with regard to the use of force, both generally and in circumstances involving mentally ill and emotionally disturbed persons, and with regard to the documentation of use-of-force incidents.  Any reasonable municipality cognizant of its duties and obligations to the citizens it serves would be aware of the need for training on use of force generally, and specifically as it pertains to citizens with mental illnesses.  The failures of the Township of Delanco adequately to train its police officers demonstrate that the Township of Delanco was deliberately indifferent to the constitutional rights of mentally ill and emotionally disturbed persons, including Mr. Taylor.  In failing to adequately train its officers, the Defendant Township of Delanco violated Article 1, Section 8 of the New Jersey Constitution, as well as the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

## COUNT XIII
(Violation of the New Jersey Civil Rights Act, 10:6.2, against Defendants Mickle and Harris and Defendants the City of Beverly and Edgewater Park Township)

101.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

102.     When Officer Shawn Mickle and Sergeant John Harris held Mr. Taylor to the ground while one of them punched Mr. Taylor, they willfully subjected him to an unreasonable seizure by employing force against him that was unreasonable and not justified by any alleged threat that he posed.  Subsequently, Defendants Mickle and Harris intentionally omitted from their statements to investigators that Mr. Taylor had been physically assaulted while he was restrained.  No disciplinary or other action was taken by Defendants the City of Beverly and Edgewater Park Township as a result of Defendant Mickle and Sergeant Harris's conduct.  This failure constituted acquiescence, approval, and ratification of Officer Mickle and Sergeant Harris's actions.  Defendant Mickle and Harris's actions violated Article 1, Section 8 of the New Jersey Constitution, as well as the Fourth and Fourteenth Amendments to the United States Constitution as implemented by 42 U.S.C. § 1983.

## COUNT XIV
(*Monell*-type claims Violation of the New Jersey Civil Rights Act, 10:6.2, against Defendants the City of Beverly and Edgewater Park Township)

103.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

104.     The injuries inflicted upon Mr. Taylor by Officers Mickle and Harris were the result of the City of Beverly and Edgewater Park Township's failures to adopt adequate policies and to adequately train their police officers with regard to the handling of incidents

22

involving mentally ill or emotionally disturbed persons. The City of Beverly and Edgewater Park Township furthermore failed to adequately train their police officers with regard to the use of force, both generally and in circumstances involving mentally ill and emotionally disturbed persons, and with regard to the documentation of use-of-force incidents. These failures demonstrate that the Defendant City and Township were deliberately indifferent to the constitutional rights of mentally ill and emotionally disturbed persons, including Mr. Taylor.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. An order requiring the Township of Delanco, the City of Beverly, and Edgewater Park Township to institute and implement adequate policies, procedures, and training with respect to police responses to situations involving mentally ill or emotionally disturbed persons, including the use of force and use of deadly force in such encounters;

b. Compensatory damages in an amount to be determined at trial.

c. Punitive damages;

d. An award of the costs and expenses of this action, including attorneys' fees; and

e. Any further relief that this Court may deem appropriate.

Respectfully Submitted,

*/s/ Daniella Gordon*

_____

DANIELLA GORDON
NJ Attorney Id No. 39372005
The Gordon Law Firm
712 E. Main St., Suite 2A
Moorestown, NJ  08057
(856) 242-3949

BARRY J. POLLACK
Miller & Chevalier, Chartered
655 Fifteenth Street, NW, Suite 900
Washington D.C.  20005
(202) 626-5830

*Attorneys for Plaintiff, Eugene Taylor*