EUGENE TAYLOR,

     Plaintiff,

v.

FRANCISCO AMBRIFI,
Individually and in his
Official Capacity as a Police
Officer for the Township of
Delanco, THE TOWNSHIP OF
DELANCO, NEW JERSEY, JOHN
HARRIS, Individually and in
his Official Capacity as a
Police Officer for Edgewater
Park Township, and EDGEWATER
PARK TOWNSHIP, NEW JERSEY,

     Defendants.

1:15-cv-03280-NLH-KMW

**OPINION**

**APPEARANCES:**

DANIELLA GORDON
HYLAND LEVIN
6000 SAGEMORE DRIVE
SUITE 6301
MARLTON, NJ 08053

BARRY J. POLLACK
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
1801 K STREET, NW
WASHINGTON D.C. 20006
    On behalf of Plaintiff

JOHN CHARLES GILLESPIE
MICHAEL E. SULLIVAN
GEORGE M. MORRIS
PARKER MCCAY, PA
9000 MIDLANTIC DRIVE, SUITE 300
P.O. BOX 5054
MOUNT LAUREL, NJ 08054

On behalf of Defendants Francisco Ambrifi and The Township of Delanco

MICHELLE L. COREA
BETSY G. RAMOS
CAPEHART AND SCATCHARD, P.A.
LAUREL CORPORATE CENTER
8000 MIDLANTIC DR.
SUITE 300
MT. LAUREL, NJ 08054
On behalf of Defendants John Harris and Edgewater Township

**HILLMAN**, District Judge

This case involves claims of excessive force, violations of the Americans with Disabilities Act, and state law torts committed by two police officers, as well as claims of municipal liability against two municipalities for their inappropriate hiring and training of the officers. Presently before the Court are the motions of Defendants for summary judgment. For the reasons expressed below, Defendants' motions will be denied as to Plaintiff's constitutional violation claims and ADA claims, and granted as to Plaintiff's state law claims.

**BACKGROUND**

Just before 3:45 a.m. on May 14, 2013, a resident on Delaware Avenue in Delanco Township, New Jersey called 911 to report a man on the street running around and screaming about Jesus. Defendant Francisco Ambrifi, a Delanco Township police officer, responded to the call and encountered Plaintiff, Eugene

Taylor, a paranoid schizophrenic who was unarmed. Ambrifi's
interaction with Plaintiff resulted in Ambrifi spraying
Plaintiff twice with pepper spray, repeatedly hitting Plaintiff
with his flashlight, and then shooting Plaintiff three times,
with one of the bullets also striking Ambrifi. Eventually other
officers responded to the scene, including Defendant John
Harris, a police officer with Edgewater Township, who struck
Plaintiff at some point during the incident. The encounter was
witnessed by the 911 caller, her husband, and their 17-year old
daughter. Those are the only relevant facts not disputed by the
parties.

The remainder of the encounter is disputed by the parties.
Plaintiff claims Ambrifi instigated an increasing use of force
while he at first remained stationary and then started walking
away with his hands up. Ambrifi claims that Plaintiff jumped in
front of his patrol car, and then continued to approach him,
refusing to obey his verbal orders, and physically resisting his
attempts to secure Plaintiff's compliance. Plaintiff claims
that Harris, who assisted in handcuffing Plaintiff once he
arrived on the scene, punched him while he lay motionless and
bleeding on the ground after he was handcuffed. Harris claims
that while he was assisting in handcuffing Plaintiff, Plaintiff
grabbed Harris's skin under his pant leg and dug in his nails.

Harris claims that when Plaintiff ignored his verbal commands to stop, Harris used an open palm of his non-dominant hand to strike Plaintiff's hand away from his leg.

Plaintiff claims that Ambrifi and Harris violated his rights under the Fourth Amendment and the New Jersey Civil Rights Act by using excessive force. Plaintiff also claims that Delanco Township violated his constitutional and NJCRA rights for its hiring and inadequate training of Ambrifi, and, similarly, that Edgewater Township violated Plaintiff's rights by failing to adequately train Harris. Plaintiff claims that Ambrifi committed the state law torts of negligence, assault and battery, and intentional infliction of emotional distress, and Harris committed the state law torts of assault and battery and intention infliction of emotional distress. Plaintiff also asserts a claim against Ambrifi and Delanco Township for violations of the Americans with Disabilities Act because of Delanco Township's failure to properly train its officers on how to respond to persons suffering from mental disabilities, and because of Ambrifi's failure to make the appropriate accommodations to Plaintiff, who is diagnosed with paranoid schizophrenia.

Defendants have moved for summary judgment on all of Plaintiff's claims. Ambrifi and Harris argue that their use of

force was reasonable under the circumstances, and they are entitled to qualified immunity. The Township Defendants reject Plaintiff's claims, supported by expert reports, that they did not properly train their officers on the proper use of force and how to make accommodations for suspects with disabilities. Delanco Township also rejects Plaintiff's claim, and supporting expert report, that it erred in the hiring of Ambrifi. Defendants further argue that Plaintiff's state law claims fail on the same bases as Plaintiff's constitutional violation claims, but also because Plaintiff failed to timely comply with the notice requirement under the New Jersey Tort Claims Act.

Plaintiff has opposed Defendants' motions in all respects.

## DISCUSSION

### A. Jurisdiction

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983 and New Jersey state law. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. § 1367.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by

affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

**1. Plaintiff's § 1983 claims**

Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the

Constitution or laws of the United States, and that the alleged
deprivation was committed or caused by a person acting under
color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988);
Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

For Plaintiff's claims against the individual defendants
acting in their personal capacity, the qualified immunity
doctrine governs the analysis.  "Qualified immunity shields
government officials from civil damages liability unless the
official violated a statutory or constitutional right that was
clearly established at the time of the challenged conduct."
Reichle v. Howards, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012).
In order to determine whether a government official is entitled
to qualified immunity, two questions are to be asked: (1) has
the plaintiff alleged or shown a violation of a constitutional
right, and (2) is the right at issue "clearly established" at
the time of the defendant's alleged misconduct?  Pearson v.
Callahan, 555 U.S. 223, 236 (2009).  Courts are "permitted to
exercise their sound discretion in deciding which of the two
prongs of the qualified immunity analysis should be addressed
first."  Id.  It is the defendant's burden to establish
entitlement to qualified immunity.  Kopec v. Tate, 361 F.3d 772
(3d Cir. 2004).

### a. Plaintiff's excessive force claims against the individual officers[1]

In determining whether excessive force was used in effecting an arrest, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820–21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). "Other relevant factors include the possibility that the persons subject to the police action

---

[1] Like § 1983, the New Jersey Civil Rights Act, N.J.S.A. 10:6-2, et seq. (NJCRA), is a means of vindicating substantive rights and is not a source of rights itself. Gormley v. Wood-El, 93 A.3d 344, 358 (N.J. 2014). Because the NJCRA was modeled after § 1983, and creates a private cause of action for violations of civil rights secured under either the United States or New Jersey Constitutions, the NJCRA is interpreted analogously to § 1983. See Norman v. Haddon Township, 2017 WL 2812876, at *4 (D.N.J. 2017). Thus, Plaintiff's NJCRA violation claims will proceed or fail for the same reasons as Plaintiff's § 1983 claims.

are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id.

Even though the determination of whether an officer acted in an objectively reasonable manner or made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury, the Third Circuit has recognized that a judge should not decide the objective reasonableness issue until all the material historical facts are no longer in dispute. Curley v. Klem, 499 F.3d 199, 211, 211 n.12 (3d Cir. 2007). To do this, "[a] judge may use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity." Id. In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, . . . but responsibility for answering that ultimate question remains with the court." Id.

In this case, the Court must deny summary judgment and employ the special interrogatory procedure for the jury to resolve the disputed facts regarding Plaintiff's excessive force claims against Ambrifi and Harris. Ambrifi and Harris relate entirely different scenarios from that proffered by Plaintiff, and Plaintiff has provided sufficient evidence, by way of eye witness testimony and video recordings, which if believed by a jury, would cast doubt on the reasonableness of Ambrifi's and Harris's actions. Thus, after a jury has answered special interrogatories regarding what occurred between Plaintiff and Ambrifi, and what occurred between Plaintiff and Harris, the Court will then determine whether each of the officer's use of force was objectively reasonable in order to ultimately determine whether either of them is entitled to qualified immunity.[2] See Lamont v. New Jersey, 637 F.3d 177, 184 (3d Cir.

---

[2] This course is especially important in a case like this, where Plaintiff is mentally impaired and does not recall a great deal of what transpired. See, e.g., Ortiz v. City of Camden, 2015 WL 3603933, at *5 (D.N.J. 2015) (stating that whether the officers acted in an objectively reasonable manner in their use of force on the decedent and are therefore entitled to qualified immunity could only be determined by the Court after a jury resolved the factual disputes, and that it was particularly necessary in that case, where the decedent could not provide his own account of what happened) (citing Tuite v. New Jersey, 2014 WL 5035707, *5 (D.N.J. 2014) (stating that because the alleged victim of excessive force by a police officer died as a result of the use of force, and therefore could not testify on his own behalf, the court was "particularly cognizant" of the duty "to examine all

2011) ("Even where an officer is initially justified in using force, he may not continue to use such force after it has become evident that the threat justifying the force has vanished."); id. at 185 ("It has long been the law that an officer may not use deadly force against a suspect unless the officer reasonably believes that the suspect poses a threat of serious bodily injury to the officer or others. In short, the dispute in this case is about the facts, not the law. The doctrine of qualified immunity is therefore inapposite.").

### b. Plaintiff's __Monell__ claims against the two municipalities

Municipalities and other local government units are among those "persons" to which § 1983 liability applies. <u>Monell v. New York City Dep't of Social Services</u>, 436 U.S. 658, 690 (1978). Local governments, however, cannot be held liable for the actions of their employees solely based on the doctrine of *respondeat superior*. <u>Id.</u> at 691-95; <u>Bielevicz v. Dubinon</u>, 915 F. 2d 845, 849-50 (3d Cir. 1990). In order to successfully state a claim for municipal liability, a plaintiff must allege that the employees' actions were pursuant to a policy or custom of the municipality itself. <u>Monell</u>, 436 U.S. at 694; <u>Watson v.</u>

the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts").

<u>Abington</u>, 478 F.3d 144, 155 (3d Cir. 2007).

To show the existence of a policy or custom under <u>Monell</u>, a plaintiff must allege that the municipality acted or failed to act in any one of three ways. First, the municipality adopted an official policy that deprives citizens of their constitutional rights. <u>Monell</u>, 436 U.S. at 694. Second, it tolerated or adopted an unofficial custom that results in the unlawful stripping of constitutional rights. <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575 (3d Cir. 2003). Third, it failed to "train, supervise, or discipline" its employees so as to prevent them from unlawfully depriving citizens of their constitutional rights. <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808 (1985). "A municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1359 (2011) (citation omitted).

For a claim of improper hiring against a municipality under § 1983, "a plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" <u>Adams v. City of Camden</u>, 461 F. Supp. 2d 263, 268-69 (D.N.J. 2006) (quoting <u>Bd. of Cty. Comm'rs of Bryan</u>

Cty., Okl. v. Brown, 520 U.S. 397, 4411 (1997)).  "[A] finding

of culpability simply cannot depend on the mere probability that

any officer inadequately screened will inflict any

constitutional injury.  Rather, it must depend on a finding that

this officer was highly likely to inflict the particular injury

suffered by the plaintiff.  The connection between the

background of the particular applicant and the specific

constitutional violation alleged must be strong."  Id. (quoting

Brown, 520 U.S. at 412).

     Plaintiff claims that Delanco Township violated his rights

for its hiring and inadequate training of Ambrifi, and that

Edgewater Township violated Plaintiff's rights by failing to

adequately train Harris.  Plaintiff has provided evidence of

Ambrifi's history with a prior police department, and expert

reports regarding how Ambrifi was highly likely to engage in

excessive force.  Plaintiff has also provided expert reports to

explain how Delanco Township's and Edgewater Township's training

– or lack of training – on the use of force and how to interact

with mentally ill suspects constituted deliberate indifference

to the rights of Plaintiff, and any other similarly situated

person who would come into contact with their officers.  The

Township Defendants do not mount a specific challenge to

Plaintiff's expert reports, but rather they argue that the

training the officers received was adequate.  Delanco Township
also argues that its actions relative to its hiring of Ambrifi
does not rise to the level of deliberate indifference.

Despite Defendants' arguments concerning the adequacy of
their training and hiring practices, Plaintiff has sufficiently
met his burden at summary judgment to show disputed material
facts relating to his unconstitutional hiring and training
claims against Delanco Township and Edgewater Township.  The
Township Defendants' motions on these claims must therefore be
denied.

### 2.   Plaintiff's ADA Claims

Plaintiff claims that Ambrifi and Delanco Township violated
the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213 (the
"ADA"), because of Delanco Township's failure to properly train
its officers on how to respond to persons suffering from mental
disabilities, and because of Ambrifi's failure to make the
appropriate accommodations to Plaintiff.  Defendants argue that
Plaintiff's claims for violations under the ADA are not
cognizable in the Third Circuit under the circumstances alleged
by Plaintiff.

The Third Circuit recently clarified, "Even though there is
some disagreement concerning the point during a law enforcement

encounter at which the ADA applies to police conduct, no court of appeals has held that the ADA does not apply at all." Haberle v. Troxell, 885 F.3d 170, 181 (3d Cir. 2018).[3] In order to prove a claim against a municipality for an ADA violation during a law enforcement encounter, a plaintiff must show that the municipality "was aware that its existing policies made it substantially likely that disabled individuals would be denied their federally protected rights under the ADA" by showing either (1) "the existing policies caused a failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs," or (2) "that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." Haberle, 885 F.3d at 182 (quotations and citations omitted).

To prove an ADA violation against a police officer, the Third Circuit noted that a "successful ADA claim demands more than an allegation of an arrest of a qualified individual with a disability" – "there must also have been a failure to make reasonable accommodations." Id. at 181 n.11 (citations

---

[3] Plaintiff filed a motion for leave to file a sur reply to address Defendants' discussion of Haberle, and attached the sur reply brief to the motion. (Docket No. 209.) Because the Court has considered that submission, Plaintiff's motion will be granted *nunc pro tunc*.

omitted).  The Third Circuit further noted, "The analysis as to what is 'reasonable' under the circumstances, including exigent circumstances, and as to how their determination is reached, presents complicated issues." Id.  Because the Third Circuit dismissed the ADA claim for pleading deficiencies in Haberle, the court noted it was not the occasion to consider the analytical approach to an ADA claim arising from an arrest.  Id. The court continued to note, however, that "in the future, we may need to consider whether and under what circumstances it is reasonable to require police officers to make accommodations during an arrest when they face an exigent threat." Id.

Here, the Court will deny without prejudice Defendants' motion for summary judgment on Plaintiff's ADA violation claims for two reasons.  First, despite Defendants' arguments to the contrary, a police officer and a municipality may violate a person's rights under the ADA during a law enforcement encounter, and such a claim is actionable in this Circuit. Second, the factual basis for Plaintiff's ADA claims is the same as for his constitutional violation claims.  Because a jury must assess the facts to determine what occurred during Plaintiff's encounter with Ambrifi, along with Delanco Township's training practices of its officers, the Court cannot conclude as a matter of law whether Defendants violated the ADA on the present

17

record.  Defendants, however, may renew their motion on

Plaintiff's ADA claims at the appropriate time during or after

trial, if appropriate.  See Fed. R. Civ. P. 50.

### 3.    Plaintiff's Tort Claims

Plaintiff has asserted several claims against Ambrifi and

Harris under New Jersey state law: assault and battery (both

officers), intentional infliction of emotional distress (both

officers), and negligence (Ambrifi).

New Jersey's Tort Claims Act (NJTCA) governs tort claims

against public employees.  Under the NJTCA, "A public employee

is not liable if he acts in good faith in the execution or

enforcement of any law.  Nothing in this section exonerates a

public employee from liability for false arrest or false

imprisonment."  N.J.S.A. 59:3-3.  The NJTCA strips a public

employee of any immunity, however, if that employee is found to

have engaged in "willful misconduct."  N.J.S.A. 59:3-14(a).

Whether these defendants acted in good faith cannot be

determined at this time for the same reasons as Plaintiff's

constitutional violation claims.  This is because the same

"objective reasonableness" standard that is used to determine

whether a defendant enjoys qualified immunity from actions

brought pursuant to 42 U.S.C. § 1983 is used to determine

questions of good faith arising under N.J.S.A. 59:3-3.  See

Mantz v. Chain, 239 F. Supp. 2d 486, 507-08 (D.N.J. 2002)

(citing Lear v. Township of Piscataway, 566 A.2d 557 (N.J.

Super. Ct. App. Div. 1989)).  Furthermore, willful misconduct is

"the commission of a forbidden act with actual (not imputed)

knowledge that the act is forbidden . . . . [I]t requires much

more than an absence of good faith and much more than

negligence."  PBA Local No. 38 v. Woodbridge Police Dep't, 832

F. Supp. 808, 830 (D.N.J. 1993) (internal quotations omitted)).

Because there exists a genuine issue of material fact regarding

whether Ambrifi and Harris engaged in willful misconduct, the

Court cannot determine as a matter of law whether the NJTCA

shields them from liability for their interaction with

Plaintiff.

In addition to a substantive challenge to Plaintiff's state

law claims, Defendants present a procedural bar to the viability

of Plaintiff's state law claims.  Under the NJTCA, a plaintiff

bringing a tort claim against a public entity or public employee

must give the relevant public entity notice of the claim within

90 days of the accrual of the cause of action.  N.J.S.A. 59:8-8.

A plaintiff who fails to do so is "forever barred" from

recovering against a public entity or employee.  Id.

The NJTCA further provides that if a claimant fails to file a notice of his claim within 90 days, that claimant may apply to the court for permission to file a late notice, and the court has discretion to permit the claimant "to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby." N.J.S.A. 59:8-9. In no event, however, "may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim."[4] N.J.S.A. 59:8-9.

Defendants argue that Plaintiff failed to file a tort claim notice, and instead only notified Defendants of his claims when his counsel mailed them a copy of his complaint filed on May 22, 2015. Plaintiff argues that compliance with the notice requirements do not apply to a mentally capacitated individual, which he is, and the NJTCA notice requirement is therefore not applicable to him.

The Court is not convinced that Plaintiff's argument is sound under the language of the NJTCA, and it also raises the

---

[4] It appears that Plaintiff filed his complaint within two years of the May 14, 2013 incident. Plaintiff's counsel's letter to Delanco Township containing a copy of Plaintiff's complaint was dated May 22, 2015. (Docket No. 174-13 at 19.)

question of how Plaintiff could have proceeded this far without a guardian unless he is competent, or at least has been so for significant periods of time after the May 14, 2013 incident. The NJTCA provides, "Nothing in this section shall prohibit a minor or a person who is mentally incapacitated from commencing an action under this act within the time limitations contained herein, after reaching majority or returning to mental capacity." N.J.S.A. 59:8-8. Plaintiff argues that his mental incapacity precludes the clock from ticking on his requirement to file a notice of claim, but the NJTCA appears to contemplate that a mentally incapacitated person will not – because he is mentally incapable - institute an action on his behalf. The NJTCA further appears to contemplate that once a person returns to mental capacity, he must then comply with the time limitations of the NJTCA. Thus, Plaintiff's argument seems to want it both ways – he does not need to comply with the NJTCA because he was, has been, and still is mentally incapacitated, but he is also mentally capable of instituting and, through this date, prosecuting his claim.

Federal Civil Procedure Rule 17(c)(1) provides that a general guardian, a committee, a conservator, or a like fiduciary may sue on behalf of an incompetent person. Rule 17(c)(2) provides, "A minor or an incompetent person who does

not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action."

Plaintiff filed this lawsuit in 2015 without a guardian and one presumes he was competent at that time. The Delanco Defendants point out in their reply brief that on June 28, 2016, Plaintiff's counsel filed a motion to appoint a guardian ad litem. (Docket No. 65.) On November 16, 2016, the magistrate judge denied that motion, finding:

> At present, based upon the Court's consideration of the opinion of a medical professional after his review of Plaintiff's medical records, Plaintiff is competent. Thus, an appointment of a guardian ad litem pursuant to Federal Rule of Civil Procedure 17(c) is not appropriate. Of course, Plaintiff's counsel may file another motion seeking appointment of a guardian ad litem if Plaintiff's condition changes.

(Docket No. 93 at 2.)

Thus, it appears that as of November 16, 2016, Plaintiff was deemed mentally capable, and was required to comply with the NJTCA at that time, if not before. In February 2018, Defendants' summary judgment motions raised Plaintiff's failure to file tort claims notices, and Plaintiff still had not filed

tort claim notices at that time, despite the magistrate judge's determination over a year before that Plaintiff was mentally competent.  As of the date of this Opinion, no tort claim notices have been filed, and Plaintiff has not applied to the Court for permission to file a late notice pursuant to N.J.S.A. 59:8-9.  Plaintiff has also failed to renew the request for the appointment of a guardian ad litem.  Under such circumstances, Plaintiff has failed to explain his failure to file timely tort claim notices or otherwise attempt to seek relief from the NJTCA notice requirements.  Plaintiff's claims under the NJTCA will therefore be dismissed.

## CONCLUSION

For the reasons expressed above, Defendants' motions for summary judgment in their favor on Plaintiff's constitutional violation claims and ADA violation claims will be denied.  The Court will grant Defendants' motions for summary judgment on Plaintiff's state law claims.

An appropriate Order will be entered.


Date:   July 11, 2018              s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.