EUGENE TAYLOR,

    Plaintiff,

v.

FRANCISCO AMBRIFI,
Individually and in his
Official Capacity as a Police
Officer for the Township of
Delanco, THE TOWNSHIP OF
DELANCO, NEW JERSEY, JOHN
HARRIS, Individually and in
his Official Capacity as a
Police Officer for Edgewater
Park Township, and EDGEWATER
PARK TOWNSHIP, NEW JERSEY,

    Defendants.

1:15-cv-03280-NLH-KMW

**OPINION**

**APPEARANCES:**

DANIELLA GORDON
HYLAND LEVIN
6000 SAGEMORE DRIVE
SUITE 6301
MARLTON, NJ 08053

BARRY J. POLLACK
ROBBINS, RUSSELL, ENGLERT, ORSECK, UNTEREINER & SAUBER LLP
1801 K STREET, NW
WASHINGTON  D.C. 20006

    *On behalf of Plaintiff*

JOHN CHARLES GILLESPIE
MICHAEL E. SULLIVAN
GEORGE M. MORRIS
PARKER MCCAY, PA
9000 MIDLANTIC DRIVE, SUITE 300
P.O. BOX 5054
MOUNT LAUREL, NJ 08054

*On behalf of Defendants Francisco Ambrifi and The Township of Delanco*

MICHELLE L. COREA
BETSY G. RAMOS
CAPEHART AND SCATCHARD, P.A.
LAUREL CORPORATE CENTER
8000 MIDLANTIC DR.
SUITE 300
MT. LAUREL, NJ 08054

*On behalf of Defendants John Harris and Edgewater Township*

**HILLMAN**, District Judge

This case involves claims of excessive force, violations of the Americans with Disabilities Act, and state law torts committed by two police officers, as well as claims of municipal liability against two municipalities for deficient hiring and training of the officers.  Defendants' deny the allegations.

By way of background, at 3:45 a.m. on May 14, 2013, a resident on Delaware Avenue in Delanco Township, New Jersey called 911 to report a man on the street running around and screaming about Jesus.  Defendant Francisco Ambrifi, a Delanco Township police officer, responded to the call and encountered Plaintiff, Eugene Taylor, a paranoid schizophrenic who was unarmed.  Ambrifi's interaction with Plaintiff resulted in Ambrifi spraying Plaintiff twice with pepper spray, repeatedly hitting Plaintiff with his flashlight, and then shooting Plaintiff three times, with one of the bullets also striking

Ambrifi.  The level of use of force and the need for it were

sharply disputed between the parties.  Eventually other officers

responded to the scene, including Defendant John Harris, a

police officer with Edgewater Township, who struck Plaintiff at

some point during the incident.  The encounter was witnessed by

the 911 caller, her husband, and their 17-year old daughter.

After the discovery process was complete, Defendants moved

for summary judgment.  On July 11, 2018, this Court denied

Defendants' motions for summary judgment on Plaintiff's

constitutional and ADA claims.[1]  Trial was set for November 5,

2018.

The Court held pre-trial conferences on October 11, 2018

and October 16, 2018, and entered orders resolving numerous

motions in limine.  On Thursday, October 25, 2018, the parties

engaged in private mediation.  On Friday, October 26, 2018, it

was reported to the Court that the matter had settled.  The

Court cancelled the trial scheduled for Monday, November 5,

2018, and administratively terminated the action pending the

scheduling of a settlement approval hearing[2] and the filing of

the parties' dismissal papers.

_____

[1] The Court granted Defendants' motions for summary judgment on
Plaintiff's state law claims.

[2] It is the understanding of the Court that Plaintiff is under a

On November 19, 2018, Plaintiff filed a motion to enforce the settlement agreement, and on December 3, 2018, Defendants Ambrifi and the Township of Delanco filed a cross-motion to enforce the settlement agreement. (Docket No. 280, 282.) On December 20, 2018, the Court entered an order declining to consider the motions, and instead directed the parties to return to the same mediator in efforts to resolve the dispute. The parties were also instructed to report to the Court the results of the mediation.[3]

On February 1, 2019, Plaintiff informed the Court that mediation was not successful, and requested that the Court resolve the parties' pending motions to enforce the settlement. For the reasons expressed below, the Court will grant the parties' motions and will now set forth the four corners of the parties' settlement agreement.

### 1. Standard for Motion to Enforce a Settlement

The law governing the enforcement of a settlement agreement holds that a settlement agreement between parties to a lawsuit is a contract like any other contract. <u>Peskin v. Peskin</u>, 638

---

civil commitment order for the purpose of ongoing mental health treatment.

[3] Defendants Edgewater Park and John Harris do not appear to be involved in this settlement dispute.

A.2d 849, 857 (N.J. Super. Ct. App. Div. 1994) (citing Nolan v. Lee Ho, 577 A.2d 143, 146 (N.J. 1990)). A contract is formed where there is offer and acceptance and terms sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty. U.S. v. Lightman, 988 F. Supp. 448, 458 (D.N.J. 1997) (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435, 608 A.2d 280 (1992)). That contract is enforceable if the parties agree on essential terms and manifest an intention to be bound by those terms. Id. Where the parties do not agree on one or more essential terms, however, courts generally hold that the agreement is unenforceable. Id.

A settlement agreement need not be reduced to writing to be binding. Vandergrift v. Pennsauken School District, 2017 WL 6566139, at *4 (D.N.J. 2017). "So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intent to be bound." Id. (citing Hagrish v. Olson, 254 N.J. Super. 133, 138, 603 A.2d 108 (App. Div. 1992) (citation and quotation omitted)).

The party seeking to enforce the alleged settlement agreement has the burden of proving the existence of the agreement under contract law. Lightman, 988 F. Supp. at 458 (citations omitted). Courts treat a motion to enforce settlement under the same standard as a motion for summary

5

judgment because the central issue is whether there is any disputed issue of material fact as to the validity of the settlement agreement. <u>Washington v. Klem</u>, 388 F. App'x 84, 85 (3d Cir. 2010) (citing <u>Tiernan v. Devoe</u>, 923 F.2d 1024, 1031 (3d Cir. 1991)).

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might affect the outcome of the suit under the governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted). The same standards apply when addressing cross-motions for summary judgment. <u>See Lawrence v. City of Phila.</u>, 527 F.3d 299, 310 (3d Cir. 2008). If upon review of cross-motions, the court finds "no genuine dispute over material facts," then judgment may be entered "in favor of the party deserving judgment in light of the law and

6

undisputed facts."  <u>Iberia Foods Corp. v. Romeo</u>, 150 F.3d 298,

302 (3d Cir. 1998).

    **2.   Analysis**

    The parties do not dispute that they agreed to the

following terms:

    1.   Defendants would pay a certain sum to Plaintiff;

    2.   Defendants would cause the subrogation suit against
        Plaintiff in New Jersey state court to be dismissed;[4]

        and

    3.   Plaintiff would dismiss the instant suit.

    The parties also do not dispute that although certain

mutual releases are typically part of a settlement,[5] the precise

language and scope of any releases in this case was not

discussed during the settlement negotiations.  This failure to

explicitly discuss releases before agreeing to the other terms

---

[4] Ambrifi made a claim for medical treatment, lost wages,
permanent injury, and various costs to the Burlington County
Municipal Joint Insurance Fund ("JIF"), which paid Ambrifi's
claim.  The JIF is subrogated to the rights of the Township of
Delanco and Ambrifi, and it brought suit against Plaintiff for
those damages in state court.  <u>See Burlington County Municipal
Joint Insurance Fund v. Taylor</u>, Docket No. BUR-L-926-15.

[5] <u>See, e.g.</u>, <u>Grow Co., Inc. v. Chokshi</u>, 2006 WL 3783522, at *2
(N.J. Super. Ch. 2006) ("If parties cannot rely upon extensively
negotiated, carefully drafted releases, then the incentive to
resolve disputes will be lessened and the finality resolutions
are thought to afford will be eviscerated.").

and declaring the matter settled, now presents this Court with
two lingering disputes one factual, one legal.

**The Parties Did Not Implicitly**
**Agree To The Terms Of A Mutual Release**

Although they differ sharply on the terms of any implicit
releases, both sides argue that that an examination of their
settlement negotiations reveals the parties implicitly agreed to
release terms.  Plaintiff argues that although he offered to
settle each of the claims asserted in this case he did not offer
to settle claims not brought here, including claims of which he
is presently unaware.  He therefore expected the release to
contain a carve out for inchoate claims.[6]  In contrast,
Defendants argue that they had offered to settle "all claims"
which the parties must have understood would necessarily include
all claims, made or not made, known and unknown, arising out of
the May 13, 2014 incident, particularly because Plaintiff never
raised the "unknown claims" issue during the settlement
discussions.

In some sense, both sides are wrong.  No reasonable

---

[6] Plaintiff argues that if at some point after the settlement
someone were to bring a new claim against him, he would be able
to assert a claim against Defendants for indemnification or
contribution for that new claim.

factfinder examining the email correspondence between the parties and the negotiations as a whole would conclude that the parties' settlement included an agreement, even an inherent or implicit one, on the nature, scope and language of a release for the benefit of either party.  Nothing in the record suggests Defendants knew of or should have known of Plaintiff's apparently subjective concern about future subrogation actions.

Defendants' position is marginally better but equally untenable.  Defendants' offer to settle "all claims" is simply too vague to necessarily encompass the kinds of forward looking releases that address inchoate claims that might ripen in the future.  Fairly read, the Defendants' offer was to settle all claims then extant between the parties as defined by the pending litigation – nothing more, nothing less.  Simply put, a reasonable factfinder could only conclude that the parties never had a meeting of the minds[7] on the nature, scope and language of mutual releases.

_____

[7] The fact the parties did not take up the scope of a mutual release until after they announced a settlement to the Court demonstrates that the releases were not only not "material" as a matter of law, see <u>infra</u>, but also not a prerequisite to an agreement the parties considered final as a matter of fact.

**As A Matter Of Law, A Release Is Not A Material
And Essential Term Of A Settlement Agreement**

The fact that the parties did not discuss releases until
after they had otherwise resolved their dispute begs a legal
question.  Are the terms of a release such an essential or
material term of a settlement agreement that the absence of such
an agreement means, as matter of law, that no contract of
settlement was reached?  The weight of the authority on this
question answers it no.  See In re Columbia Gas System Inc., 50
F.3d 233, 243 (3d Cir. 1995) (explaining that the "execution of
the release to be found in the settlement of any case" is a
"ministerial act"); Fogarty v. Household Finance Corporation
III, 2018 WL 4039506, at *8 (D.N.J. 2018) (citations omitted)
("To the extent plaintiff argues there was no settlement until a
formal release or settlement agreement was signed, the argument
is rejected.  A settlement agreement need not be reduced to
writing to be binding.  In fact, the execution of a release is a
formality."); Torre v. Geary, 2017 WL 1101488, at *6 (N.J.
Super. Ct. App. Div. 2017) (citing Jennings v. Reed, 885 A.2d
482, 489 (N.J. Super. Ct. App. Div. 2005) ("Even the failure to
execute release documents does not void the original agreement,
or render it deficient from the outset.  Execution of a release
is a mere formality, not essential to formation of the contract

of settlement." (citing <u>Hagrish v. Olson</u>, 254 N.J. Super. 133,
603 A.2d 108 (App. Div.1992) (a settlement agreement which
required defendants to pay a stated sum of money and which
barred plaintiffs from pursuing an appeal is enforceable even
though the plaintiffs failed to execute general releases)).

This Court agrees with these decisions, adopts their
reasoning and applies it here. The parties reached a binding
settlement agreement that does not have, and did not have to
have, a provision for mutual releases or any release at all.

**The Fact That The Parties Did Not Agree On**
**Releases Does Not Mean That The Parties Did**
**<u>Not Mutually Agree To Some Measure Of Finality</u>**

Having addressed what the parties did not agree to, and
whether it was required as a matter of law (which it is not),
the Court now turns to what the parties did in fact agree to.
As noted above, the parties agreed that Plaintiff would dismiss
the instant case and the Defendants would pay a sum certain and
dismiss the subrogation case pending against Plaintiff in state
court. Inherent in the dismissal of those cases is the notion
that both parties agreed to forgo and abandon with certainty and
finality all of the claims fairly encompassed and actually
asserted within those cases.

Stated differently, no reasonable person or factfinder

could find anything other than the parties agreed to abandon the two lawsuits and never again assert those same legal claims and factual assertions in any forum in the future. Stated in the common language of the law, the parties agreed implicitly to dismiss those cases *with prejudice.*

As set forth in the format previously used above to describe the agreed terms, the parties entered into the following agreement:

1. Defendants will pay a certain sum to Plaintiff;

2. Defendants will cause the subrogation suit against Plaintiff in New Jersey state court to be dismissed <u>with prejudice</u>;

   and

3. Plaintiff will dismiss this suit <u>with prejudice</u>.

This conclusion as to the parties' settlement terms provides the requisite finality to the parties' dispute over the May 13, 2014 incident, which is one of the main purposes of a settlement and manifests with certainty the relinquishment of the parties' right to pursue the claims asserted in the two matters. <u>See</u> <u>Ehrheart v. Verizon Wireless</u>, 609 F.3d 590, 595 (3d Cir. 2010) (explaining that the strong public policy in favor of settlements "ties into the strong policy favoring the finality of judgments and the termination of litigation").

Further, this conclusion promotes the fundamental principle

that the settlement of litigation ranks high in our public policy, which "is based upon the notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone." Brundage v. Estate of Carambio, 951 A.2d 947, 961 (N.J. 2008) (citations omitted); see also Copeland v. Nixon, 396 F. App'x 784, 786 (3d Cir. 2010) (citing McDermott, Inc. v. AmClyde, 511 U.S. 202, 213-15 (1994)) ("Settlement agreements are encouraged as a matter of public policy."). In furtherance of this policy, courts "strain to give effect to the terms of a settlement wherever possible." Brundage, 951 A.2d at 961 (citation omitted).

There remains, of course, some uncertainty arising from the absence of clearly articulated and negotiated written releases that look forward to the future. But, as the Court has noted, they are not required as a matter of law and fault for the absence of mutual releases falls on both parties who negotiated a final settlement without them.

More importantly, the parties' past legal and factual positions as articulated in the pleadings[8] and other filings in

---

[8] See, e.g., Amended Complaint, Docket No. 144 at 16, "As a result of the Defendants' actions and omissions, Mr. Taylor suffered significant physical injuries and emotional distress, injuries which Mr. Taylor continues to suffer and will suffer in

the two matters are a matter of public record, ascertainable and immutable.  This Court's articulation of the settlement terms should provide concrete guidance to any other court which might be tasked with determining whether future litigation constitutes a breach of the settlement agreement or offends principles of res judicata and claim preclusion.  See In re Estate of Gabrellian, 859 A.2d 700, 708 (N.J. Super. Ct. App. Div. 2004) (explaining that "[r]es judicata, as do the other issue preclusion concepts, has the salutary purpose of preventing re-litigation of the same controversy between the same parties," which includes dismissals with prejudice as a result of a settlement); Toscano v. Connecticut General Life Ins. Co., 288 F. App'x 36, 38 (3d Cir. 2008) (citation and quotations omitted) ("A somewhat modified form of res judicata applies if a

---

the future."); Burlington County Municipal Joint Insurance Fund v. Taylor, Docket No. BUR-L-926-15, Complaint, ¶ 6 (subrogating Ambrifi's claim for permanent injury and relating medical expenses and pain and suffering).  To be clear, this Court's crystal ball is currently in the repair shop precluding the expression of any opinion as to whether any future litigation asserts claims that were (or perhaps should have been) asserted in the two matters the parties agreed to dismiss with prejudice. Any attempt to do so would amount to an improper advisory opinion.  See D.O. ex rel. C.O. v. Borden, 2012 WL 1078991, at *2 (D.N.J. 2012) (citing North Carolina v. Rice, 404 U.S. 244, 246 (1971)) ("It has been long held that a federal court has no power to issue advisory opinions[.])  It will simply be left to another Court and another judge in another case to examine the record of the dismissed actions and render a judgment as to the viability of any future litigation, if brought at all.

settlement agreement triggers a dismissal and a defendant's consequent discharge. The express terms of a settlement agreement, not merely the terms of the judgment, determine the bounds of preclusion after a settlement. Judicially approved settlement agreements are considered final judgments on the merits for the purposes of claim preclusion. Additionally, the identity of the cause of action refers not only to claims actually litigated, but to those that could have been litigated in the earlier suit if they arise from the same underlying transaction or events."). That the parties could have bargained for more certainty – but chose not to – should not bar this Court, or for that matter any other court, from enforcing the agreement they did reach.

## CONCLUSION

The parties' motions to enforce the settlement agreement will be granted. The parties reached an enforceable settlement as articulated above. The parties will be directed to appear on a date to be set for an approval hearing in light of Plaintiff's civil commitment if the parties continue to request such a hearing. An appropriate Order will be entered.


Date: April 17, 2019                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.